DISTRICT OF OREGON
**F I L E D**
**May 01, 2025**
**Clerk, U.S. Bankruptcy Court**

Below is an opinion of the court.

_____
DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>**Elina Aulikki Niemela,**<br><br>Debtor. | Case No. 24-33028-dwh11<br><br>**MEMORANDUM DECISION ON MOTION TO DISMISS OR CONVERT**[1] |

**I.    Introduction**

At a hearing on April 16, 2025, on the United States trustee's Motion to Dismiss Case,[2] I announced and explained my decision to grant the motion, but I deferred a decision on which remedy—dismissal or conversion to chapter 7—to grant. Participating in that hearing were Ms. Niemela and attorneys for the United States trustee and three creditors: the U. S. Small

---

[1] This disposition is specific to this case. It may be cited for whatever persuasive value it may have.
[2] ECF No. 100.

Page 1 – MEMORANDUM DECISION GRANTING MOTION TO etc.

Business Administration, PHH Mortgage, and 1Sharpe Opportunity Immediate Trust.

I invited the participants to file written comments on whether, in their opinions, dismissal or conversion would best serve the interests of creditors and the estate. The SBA filed a statement[3] in favor of dismissal. No one else filed a statement, but 1Sharpe made a comment in a reply[4] in support of its pending Motion for Relief from Stay[5] that it "takes no position on whether dismissal or conversion is in the best interest of all of the creditors of Debtor's bankruptcy estate."[6]

For the reasons that follow, I will convert, rather than dismiss, this case.

## II. Facts

The factual record on this motion is limited. The U. S. trustee declined to present evidence on the choice between dismissal or conversion. To the extent that participants relied on facts in support of one or the other remedy, they did so only with reference to Ms. Niemela's filed schedules. My factual analysis is therefore necessarily also confined to the schedules, in addition to the proofs of claim. I do not purport to determine whether the facts reported in the schedules are actually correct, nor do I determine the correctness of

---

[3] ECF No. 134.
[4] ECF No. 136.
[5] ECF No. 72.
[6] ECF No. 136 at 2.

Page 2 – MEMORANDUM DECISION GRANTING MOTION TO etc.

any filed claim. I refer to these things only because they are the sole source of information I have regarding the possible consequences of dismissal or conversion.

According to the claims register, the total amount of all filed claims is $2,354,852.72, the total amount of secured claims is $1,840,195.46, the total amount of unsecured priority claims is $310,250.13 (claimed by the Internal Revenue Service), and the remaining $204,407.13 is the total amount of nonpriority unsecured claims. The true amount of unsecured claims is likely larger, because the SBA filed a claim for $164,085.06, which it denominated as fully secured,[7] but it now takes the position that the claim is actually secured by little or no collateral value.[8]

According to the schedules, there are at least three assets of the bankruptcy estate with substantial equity: (1) a single-family home on Capitol Highway in Portland,[9] land in Multnomah County,[10] and a single-family home in Federal Way, Washington.[11] Accepting Ms. Niemala's figures for those properties' values and the secured-claim amounts, except as the secured-claim amounts are superseded by proofs of claim, the amounts of equity in those properties are $48,982.57 for the Capitol Highway property

---

[7] Claim No. 13-1.
[8] ECF No. 134 at 1.
[9] ECF No. 48 item 1.1.
[10] ECF No. 48 item 1.5.
[11] ECF No. 48 item 1.4.

Page 3 – MEMORANDUM DECISION GRANTING MOTION TO etc.

(value of $350,000 and secured debts to City of Portland of $7,000,[12] to Mr. Cooper of $204,017.43,[13] and to Shellpoint of $90,000[14]), $116,000 for the land in Multnomah County (value of $150,000 and secured debt to Peter Ettro of $34,000[15]), and $65,980.01 for the Federal Way property (value of $550,000 and secured debt to 1Sharpe Opportunity Intermediate Trust of $484,019.99[16]).

Ms. Niemela has asserted exemptions in the full amount of the values of both the Capitol Highway and Federal Way properties, but it is facially apparent that these claims of exemption could not be sustained against an objection. On the petition date, October 31, 2024, the maximum homestead exemption that an Oregon debtor could claim was $40,000.[17] Even that amount is available only with respect to property that is "the actual abode of and occupied by the owner, or the owner's spouse, parent or child[.]"[18] Because the statute allows an exemption on only one home, she cannot validly claim an Oregon homestead exemption in both properties, and I am unaware of any other Oregon exemption that she could use for either property. If she claimed federal instead of state exemptions, she could theoretically assert an exemption in both properties by using both the

---

[12] ECF No. 49 Sched. D item 2.6.
[13] Claim 11-1.
[14] ECF No. 49 Sched. D item 2.2.
[15] ECF No. 49 Sched. D item 2.7.
[16] Claim 6-1.
[17] ORS 18.395(1) (2023) ~~(effective through December 31, 2024)~~.
[18] *Id.*

Page 4 – MEMORANDUM DECISION GRANTING MOTION TO etc.

homestead exemption[19] and the so-called wildcard exemption,[20] but these exemptions are also limited in amount and would not be enough to make both properties fully exempt, assuming the values reported in her schedules are correct.

This last caveat is important, and I acknowledge the possibility that the values reported in the schedules are incorrect. In fact, 1Sharpe has a pending motion for relief from stay seeking to foreclose against the Federal Way property, and it takes the position that there is no equity in it.[21] As I noted earlier, the record on this motion does not allow me to determine what the facts really are. I can only find that there is at least a reasonable possibility that a chapter 7 trustee would be able to liquidate some asset or assets for the benefit of unsecured creditors if I convert the case.

The schedules also show that Ms. Niemela has little income. Her Schedule I reports total monthly income of $893, including $293 of food stamps.[22] And her most recently filed Schedule J reports $11,010 in monthly expenses,[23] leaving her no net income from which to pay existing debts. Again, I cannot determine on this record whether these reported facts are correct, but I can and do find that, if I dismiss the case, her unsecured

---

[19] 11 U.S.C. § 522(d)(1).
[20] 11 U.S.C. § 522(d)(3).
[21] ECF no. 72 at 6, 14.
[22] ECF No. 38 Sched. I item 12.
[23] ECF No. 48 Sched. J item 23b.

Page 5 – MEMORANDUM DECISION GRANTING MOTION TO etc.

creditors will have little hope of recovering any part of their claims from her future income.

### III. Analysis

Section 1112(b)(1) of title 11 of the United States Code requires me to determine whether dismissal or conversion to chapter 7 "is in the best interests of creditors and the estate[.]" Based on the facts I recount above, I conclude that conversion to chapter 7 is in the best interests of creditors and the estate. If I convert the case, a chapter 7 trustee will have an opportunity to determine whether either the Capitol Highway property, the land in Multnomah County, or the Federal Way property, or all of them, can be sold for the benefit of secured and unsecured creditors. I recognize that the answer might be no, given the limited evidence that there is equity in either property. The Capitol Highway property in particular is unlikely to be liquidated, because—even assuming the accuracy of the scheduled value—Ms. Niemela's allowable $40,000 homestead exemption would leave only $8,982.57 of nonexempt equity, which would probably be inadequate to cover costs of sale. Still, there appears to be equity in the land in Multnomah County, and possibly also in the Federal Way property, that a trustee could liquidate for the benefit of creditors.

But if I dismiss the case, it is likely that unsecured creditors will be permanently unable to recover any part of their claims. 1Sharpe's pending foreclosure against the Federal Way property would continue and be

Page 6 – MEMORANDUM DECISION GRANTING MOTION TO etc.

concluded, which almost certainly would leave nothing for unsecured creditors. To the extent any unsecured creditor tried to recover against the Capitol Highway property, it would have to contend with the recently amended Oregon homestead-exemption statute, which as of January 1, 2025, permits Ms. Niemela to exempt $150,000 worth of value in her home.[24] Granted, as discussed above, that property probably cannot be liquidated in bankruptcy either, but creditors would fare even worse outside of bankruptcy. And because Ms. Niemela has no net income, neither garnishment nor voluntary payment of unsecured debts is realistically possible. The apparent equity in the land in Multnomah County could be monetized by a creditor–but on a first-come, first-served basis.

The SBA makes three arguments in support of dismissal instead of conversion. First, it points out that the participants in the April 16 hearing stated a preference for dismissal. Second, it argues that creditors would be able to use whatever remedies are available to them outside of bankruptcy without any chapter 7 trustee fees or other administrative expenses. Third, it argues that the small and doubtful amount of equity in the properties make conversion less beneficial to creditors than dismissal.

On the first point, I acknowledge that no participant in the hearing spoke in favor of conversion, and at least some favored dismissal. I am

---

[24] ORS 18.395(1)(a), amended effective January 1, 2025, by 2024 Or. Laws ch. 100 § 4.

Page 7 – MEMORANDUM DECISION GRANTING MOTION TO etc.

reluctant to choose a remedy that no party has requested, especially given the strong norm in federal-court jurisprudence for allowing the litigants to frame the issues.[25] Nevertheless, there is a countervailing norm in bankruptcy cases that a court should "comply with . . . self-executing requirement[s]" of the Bankruptcy Code even if the affected "creditor fails to . . . appear in the proceeding at all."[26] Section 1112(b) contains a self-executing requirement that I determine whether dismissal or conversion is better for creditors and act on that determination even if no creditor appears and argues for it. I cannot escape the conclusion that conversion is at least slightly more likely to result in some benefit to creditors.

As to the SBA's second argument, I have already explained my conclusion that unsecured creditors would be unlikely to recover anything outside of bankruptcy. The possibility of chapter 7 administrative expenses does not change that conclusion. If, as the SBA fears, the chapter 7 trustee determines that there are no assets worth liquidating, the trustee will simply file a no-asset report, and no administrative expenses will accrue. If the trustee determines that there are assets to liquidate, then the trustee will be entitled to a commission from the proceeds of liquidation,[27] but unsecured creditors will still be better off with whatever is left after payment of the commission than they would be outside of bankruptcy.

---

[25] *See* United States v. Sineneng-Smith, 590 U.S. 371, 375 (2020).
[26] United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 276–77 (2010).
[27] 11 U.S.C. § 326(a).

Page 8 – MEMORANDUM DECISION GRANTING MOTION TO etc.

The SBA also argues that it "has only a collateral interest in the Debtor's business personal property, of which there appears to be very little, if any. As such, the SBA would recover negligible funds from liquidation . . . and the agency would be prevented from any future collection efforts."[28] This argument appears to assume that the SBA would be treated as a secured creditor in chapter 7 and therefore excluded from distribution under section 726, even though it doubts that its claim is really secured. This assumption is incorrect; the SBA is entitled to be treated as an unsecured creditor to the extent its putative collateral either does not exist or does not adequately secure its claim[29] (and if the SBA amends its proof of claim accordingly). Regarding the SBA's argument that dismissal would spare secured creditors the need to litigate relief-from-stay motions, I note that two such creditors have filed already filed motions and incurred the associated fees. Although those movants will incur some amount of legal expense if they choose to continue prosecuting their motions, there is no reason to think the expenses will be onerous.

Finally, regarding the SBA's argument about the limited liquidation value of the estate, I have already explained my reasons for concluding that creditors are more likely to receive some payment through liquidation than outside of bankruptcy.

---

[28] ECF No. 134 at 1.
[29] 11 U.S.C. § 506(a), (d).

Page 9 – MEMORANDUM DECISION GRANTING MOTION TO etc.

## IV. Conclusion

I will enter an order converting this case to chapter 7.

### # # #

cc: Elina Aulikki Niemela